2002 ME 166

**STATE of Maine,**

v.

**Richard HATT.**

Supreme Judicial Court of Maine.

Argued: May 8, 2002.

Decided: Nov. 13, 2002.

Geoffrey A. Rushlau, District Attorney, Patricia A. Mador, Asst. Dist. Atty., Wiscasset, ME, for State.

Andrews B. Campbell, Esq., Waldoboro, ME, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1]   Richard Hatt appeals from the judgments of conviction entered in the Superior Court (Lincoln County, *Mills, J.*) after a jury found him guilty of one count of aggravated assault (Class B), 17–A M.R.S.A. § 208 (1983), and one count of criminal threatening (Class C), 17–A M.R.S.A. § 209 (1983). Hatt asserts, *inter alia,* that the trial court erred when it prohibited an expert witness from testifying about the particular personality disorders from which the victim suffered. We disagree and affirm the judgments.

I.   STATEMENT OF THE CASE

[¶ 2]   Richard Hatt was charged with the kidnapping, criminal restraint, gross sexual assault, aggravated assault, assault, criminal threatening, and terrorizing of his former girlfriend. Prior to his trial, Hatt filed a motion in limine to admit the expert medical testimony of Dr. Kathryn Thomas,

a clinical psychologist, to provide insight concerning the victim's borderline personality disorder and substance abuse problems. The court deferred judgment on this motion until trial.

[¶ 3] During the course of the trial, Hatt's attorney discussed with the court his motion in limine concerning the admissibility of expert testimony about the victim's personality disorders and substance abuse problems. Hatt proposed to call Dr. Thomas as an expert in the field of psychology. Although Dr. Thomas never met the victim, she did examine her psychological record which consisted of five psychological reports and evaluations produced by the State in response to a discovery request. Hatt made an offer of proof that Dr. Thomas was prepared to testify that the victim suffered from a borderline personality disorder,[1] with strong narcissistic and antisocial characteristics that was manifested by poor judgment, erratic and inconsistent behavior, claims of helplessness to change things, and other such effects.

[¶ 4] The court, however, ruled that Dr. Thomas had to limit her testimony to the victim's substance abuse problems and could not discuss any psychological personality disorders. The jury convicted Hatt of aggravated assault and criminal threatening, but acquitted him of the other charges.[2] Hatt then filed this appeal.

## II. THE EXCLUSION OF PROFFERED TESTIMONY

▬ [¶ 5] Hatt argues that the trial court erred when it precluded Dr. Thomas from testifying about the victim's personality disorders. We review "a trial court's decision to exclude evidence for an abuse of discretion or clear error." *State v. Tomah*, 1999 ME 109, ¶ 7, 736 A.2d 1047, 1050.

[¶ 6] In this case both the victim and Hatt testified. The victim testified about

1. The diagnostic criteria for borderline personality disorder, from DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) (DSM–IV), are:

   **301. 83 Borderline Personality Disorder**
   A pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity beginning by early adulthood and present in a variety of contexts, as indicated by five (or more) of the following:

   (1) frantic efforts to avoid real or imagined abandonment. **Note:** Do not include suicidal or self-mutilating behavior covered in Criterion 5.
   (2) a pattern of unstable and intense interpersonal relationships characterized by alternating between extremes of idealization and devaluation.
   (3) identity disturbance: markedly and persistently unstable self-image or sense of self.
   (4) impulsivity in at least two areas that are potentially self-damaging (e.g., spending, sex, substance abuse, reckless driving, binge eating). **Note:** Do not

   include suicidal or self-mutilating behavior covered in Criterion 5.
   (5) recurrent suicidal behavior, gestures, or threats, or self-mutilating behavior.
   (6) affective instability due to a marked reactivity of mood (e.g., intense episodic dysphoria, irritability or anxiety usually lasting a few hours and only rarely more than a few days).
   (7) chronic feelings of emptiness.
   (8) inappropriate, intense anger or difficulty controlling anger (e.g., frequent displays of temper, constant anger, recurrent physical fights).
   (9) transient, stress-related paranoid ideation or severe dissociative symptoms.

2. Hatt was sentenced to ten years in prison on the aggravated assault charge, and five years on the criminal threatening charge, all suspended, with a period of four years probation on the criminal threatening charge. The court ordered the two sentences to be served consecutively.

beatings at the hands of Hatt over a three-day period in March 2000 and the numerous threats by Hatt to kill and torture her during that same period. Hatt, on the other hand, admitted to hitting the victim only because she was assaulting him, and he denied the threats and various particulars that had been testified to by the victim. The victim did not report this incident to the police, and it only came to the attention of the authorities five days later when the victim's probation officer visited her at home and observed the bruises on her face and arms. The victim acknowledged her confused feelings toward Hatt and testified to numerous communications she had with Hatt following the March 2000 incident, including residing with Hatt for a period of time and writing to him that she wanted to marry him.

[¶ 7] Hatt offered Dr. Thomas's testimony for the primary purpose of impeaching the victim's credibility. For this purpose of undermining the victim's credibility, the proffer was insufficient.

[¶ 8] In *United States v. Butt*, 955 F.2d 77, 82 (1st Cir.1992), the Court of Appeals cited the longstanding federal precedent that the mental instability of a government witness at the time of the events testified to was relevant for purposes of impeachment so long as that evidence assisted the jury in evaluating the witness' ability to perceive, recall, or testify accurately. The court concluded, however, that only evidence of serious mental illness that "dramatically" impairs the witness' ability to perceive and tell the truth or evidence of mental instability, or that involves "a pronounced disposition to lie or hallucinate," is admitted by the federal courts. *Id.* at 82–83. This standard is consistent with our holding in *State v. Lewisohn*, 379 A.2d 1192, 1203–04 (Me.1977), that expert testimony can be used to impeach a witness' credibility only where there is "a 'medical condition,' " i.e., "a disability of the mental or physical processes," that "affect[s] the ability of the witness to tell the truth."

[¶ 9] In this case we have the diagnosis of a recognized mental disorder, that is, borderline personality disorder. However, the proffer does not include a sufficient description of either the traits of the disorder generally or of the witness' manifestations of the disorder in particular to allow the court to determine that Dr. Thomas's testimony would be helpful to the jury on the question of the witness' ability to perceive matters and truthfully testify about them. The victim's "strong narcissistic and antisocial characteristics" or "manipulative behavior" about which Dr. Thomas would have testified do not, at least without further explanation, connote difficulties in perceiving or relating the truth. Unless the mental illness of the victim is related to her ability to perceive reality, her memory, or her capacity to testify truthfully, the mental illness is not relevant and the testimony of an expert concerning the characteristics of that mental illness is not admissible. The offer of proof of Dr. Thomas's testimony was insufficient to demonstrate its relevance. The Superior Court did not exceed the bounds of its discretion in excluding the evidence.

[¶ 10] The other issues raised by Hatt do not merit comment.

The entry is:

Judgments affirmed.